Next case on our call this morning is agenda number three, case number 104558, People of the State of Illinois v. Robert T. Lucas. Mr. Hamill, are you ready to proceed? Good morning, Your Honors. My name is Fletcher Hamill, and I represent the defendant, Appellant Robert Lucas. May I please support the counsel? Your Honors, this is a case where Mr. Lucas drove a car while carrying a two-inch spring-loaded knife, and as a result of that conduct, he now stands convicted of a class-X felony, and he is serving a sentence of 30 years imprisonment. Now, the State's theory behind this conviction and sentence is that it proved at trial that the defendant was driving while his license was revoked, making his conduct a Class A misdemeanor. And then at sentencing, the State proved that the defendant had a prior conviction of driving while his license was revoked, and that his revocation was the result of a driving while under the influence conviction, thus making his conduct a Class IV felony, which could serve as a predicate offense for armed violence. Now, there are two, I think, major problems with this theory of prosecution. Number one, this conduct simply is not armed violence. This is driving a car with a knife. And secondly, this conviction rests in part on evidence that was presented at sentencing. If the State had gone to the sentencing hearing and presented no evidence, the defendant's conviction would have had to be vacated at that point. The trial judge could not sentence him because there would be no proof that he committed a felony while he was armed. Mr. Hamel, can we focus for a minute on that 11-3C problem? It says, The fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. So, if I understand the facts correctly, the evidence relating to defendant's prior DWRL conviction was never presented to the jury, is that right? Right. Instead, it was presented to the trial court at sentencing, but nevertheless, the jury was allowed to return a verdict on armed violence, right? That's correct. How did the armed violence instruction read in this case? The armed violence instruction included the elements of misdemeanor driving while license is revoked, which I think was done in an attempt to comply with Section 111-3C. And I think the existence of 111-3C is relevant to this case, really, in two aspects. And it goes to both of the issues that I was hoping to focus on today. I think that the existence of Section 111-3C evinces the legislator's intent not to make separate felony offenses for these enhanced misdemeanors. And there's two reasons for that. One is the actual language of 111-3C, which says that these are not elements of the offense to be proved at trial. And if they're not elements of the offense, if these enhanced misdemeanors have the same elements as do the misdemeanor versions of the offenses, then they're not separate offenses. They're simply extended-term sentencing provisions, which is what the appellate court has held several times, and this has come up in different contexts, including the 3rd District, which said the opposite in this case. Now, then the second part of that problem is that it creates this situation, where this statute provides that the state is forbidden from proving these elements that make these crimes felonies. And that's all well and good if you're doing that in a misdemeanor prosecution or a class 4 felony prosecution where you're simply giving somebody an extended term. But this is armed violence, and one of the essential elements of this crime is the commission of a felony. And the jury in this case found that this defendant committed a misdemeanor while armed, and that's not a crime. Or at least it's not a – you know, it's a misdemeanor and it could be unlawful use of a weapon, but it's not a – it's not a lesser-included offense of armed violence. So there's no valid conviction to get – Counsel, could the trial court have sentenced the defendant to a class 4 felony? Yes, and you did. You'd say that wasn't an offense. That was an enhancement of the penalty for the class A misdemeanor. Correct, yeah, and that's based on 111.3c. Also, I think it's supported also by common sense in that a class A misdemeanor is already punishable by 364 days in jail. And that is the maximum that any misdemeanor can possibly be punished. If you punish them one more day, if you give them one more day, then it's a class 4 felony by definition. So the – and this is the – and this is why the appellate courts, in interpreting the statute in other contexts, have all agreed that these really are just – these just really are misdemeanor offenses that are – you know, they're given an extended term sentencing provision for repeat misdemeanors because we have to do something to give them longer prison sentences when people repeatedly violate them. It is not intended to create a separate new felony offense that can be a predicate offense to driving – or to armed violence. Looking at this – And the statute does say, relative to the armed violence, any felony. Isn't that correct? It does say any felony, other than a list of, I think, about 10. Would your argument have to be here – and please correct me if I'm wrong – that there was no felony here? It was simply an enhanced sentence? Not necessarily, because really from almost day one, this court has held that any felony does not mean every single felony. And beginning with People v. Herron, which is cited in my brief, this court found that any felony did not include a felony – Looking to that case precedent, which is this case similar to and why? I'm sorry, I didn't – Which is this case similar to and why of those felonies that didn't fall into the category of any felony? Out of the three, this is probably most similar to the one in Herron, the aggravated battery with a firearm. But the general point of all three cases is the same, and that is that any felony should not be construed literally, that it should be limited to those felonies that further the purpose of the armed violence statute. And there are – looking at the conduct in this case under that standard, in this case, it's driving. He drove a car. And that was the extent of the conduct that he committed to make him eligible for armed violence here, if this court agrees with the state's theory. Is it of no significance that he had a violent background? Well, I mean, that's what made it a more serious – the underlying offense more serious and to be punished more seriously. The fact that he had a violent background actually has nothing to do with it. I'm sorry. The fact that he had a bad driving record before that was relevant to make this possible, to make it an enhanced misdemeanor. But his prior violent convictions actually have nothing to do with the elements of this offense. He – and looking at the other side of this, the fact that this was not proved is, I think, crucial. And it really just is a conflict here between 111.3c and the armed violence statute. And this is getting back to which case is most similar. The Heron case, the reason why this court found that the aggravated battery of a firearm statute could not be a predicate offense to armed violence was that it, doing so conflicted with the penalty provisions of the armed violence statute that were in effect at the time that provided that – that related the penalty to what the penalty would be if the felony committed – was committed by an unarmed person. This court held that that assumed that there would be an unarmed – if the person was unarmed, it wouldn't be a felony. Then it couldn't be a predicate offense. Here, the conflict between 111.3c and the armed violence statute is more direct and is a much more meaningful conflict because it is, as a practical matter, impossible to comply with both the due process clause and 111.3c. Because the state, in order to prove that the defendant committed a felony while armed, they have to prove these prior convictions, this DWLR and the DUI. And without that proof, you have a conviction of committing a misdemeanor while armed. On the other hand, Section 111.3c says they can't prove these elements. So the best way to resolve this is the way this court resolved the conflict in Heron and say these obviously were not meant to be predicate offenses. The other way to resolve it is to have the due process clause win. And that's really the second argument in my brief where if you're going to have this as a predicate offense and you just can't follow 111.3c in an armed violence prosecution, it does fit with the language in 111.3c because 111.3c does limit itself in application to those cases in which a defendant is prosecuted for an enhanced misdemeanor. Since armed violence is not really an enhanced misdemeanor, it's a separate class X offense, then 111.3c shouldn't apply. And even if it did, the due process clause obviously beats 111.3 if you were to choose between the two. And let's just clarify. If they had properly charged the offense then in your mind, then we'd be okay? No. And actually if they put the elements in the charging document and gave a verdict with the additional element in it, the prior driving license revoked. No, the short answer is no. One thing I would like to clarify, they did actually charge this with the enhanced misdemeanor elements in the charging instrument. They did charge it. It is in the indictment. It wasn't in the instructions. They couldn't offer evidence of it because of the statute. Right, right. The statute actually, and the statute. One more question. Sure. Should the state have disregarded that statute that prohibited adding the second offense or the prior offense? Yes. If they had done that, would they have been all right? No, and I still don't think they would be. And, yeah, I took a little detour there. I'm sorry. But they're still not okay for both reasons. Well, I think they're still not okay because it's still driving, driving a car. And it's still an offense that was meant to be a misdemeanor. The conduct for misdemeanor driving while license revoked is exactly the same as the conduct for felony driving while license was revoked, which is also exactly the same as legal activity. The only difference is the driving record, which has absolutely nothing to do with the nature of the conduct itself. It's a sentencing consideration. It is not a consideration for determining whether or not something is an offense or is a felony or a misdemeanor or should be a predicate offense for armed violence. If the court, your Honors, don't have any further questions, I would ask just that you reverse the appellate court and vacate Mr. Lucas' conviction of armed violence. Thank you, Mr. Hanlon. Good morning again, your Honors. Counselor, may it please the Court, I am Assistant Attorney General Garson Fisher of the Office of the Illinois Attorney General for the appellee in this case, the people of the state of Illinois. First, your Honor, I think... Mr. Fisher, let me ask you something out of the box here. If for some reason the DWLR conviction had somehow been deficient, then the jury's armed violence conviction, you would assume, would have to be vacated, right? Correct. But how can a jury conviction be undone by evidence presented in sentencing? Because evidence was never presented to the jury, or let me put it this way, the evidence presented to the jury established only the misdemeanor form of DWLR, right? I don't believe that's correct, your Honor. There are three statutes here, each of which have plain, unambiguous language. One of which is that a second DWLR, where the original revocation was for DUI, is defined as a Class IV felony. The second, and this is where 5111-3C of the Criminal Code of 1963 is relevant, states that that prior conviction, while it must be charged, is not an element of DWLR, even when it's defined as a felony. And the defendant asserts that that creates a due process problem, but the Supreme Court, the United States Supreme Court, excuse me, has made it clear that it does not in Amaldarez-Torres and its discussion of that case in Apprendi. It stated that the fact of a prior conviction is the one fact essential to a sentence that doesn't need to be proven to a jury because the procedural safeguards attached to the prior conviction mitigate the due process concerns that would otherwise be implicated. The elements of armed violence are that while armed with a dangerous weapon, defendant commit any crime defined as a felony by Illinois law. DWLR is unambiguously defined as a Class IV felony when it's a prior conviction, but that doesn't mean that the prior conviction becomes an element of the crime. Your argument then that the prior conviction is not an element of the crime? Correct, Your Honor. It does need to be demonstrated to the judge at sentencing in order for DWLR to be defined in the case as a felony, and the defendant needs to be notified by the charging instrument that the state intends to use the prior conviction to define DWLR as a felony, but it's not an element of the crime and doesn't need to be proven to the jury. It's not a due process issue because there was due process involved earlier with the conviction? The U.S. Supreme Court's discussion of this exception in Apprendi makes clear that any fact essential to a defendant's sentence must be proven to a jury, but there's an exception made for prior convictions because of the due process protections that exist in the course of the prior conviction. This discussion by the Supreme Court dealt specifically with Apprendi sentences, didn't it? Yes, Your Honor. Maybe it bollocks this up, so stay with me for a moment. The second crime, the prior crime in this structure, raises the classification of the charge for misdemeanor to felony. Is that right? Correct, Your Honor. Now that is not directly a sentencing issue, is it? It results in a sentencing change, but it's really not a sentencing issue. It changes the grade of the crime. Yes, Your Honor, it changes the grade of the crime. That can't happen until the judge is called upon to make the finding of whether or not the prior crime will be considered in this case for whatever purpose. I don't believe that's correct, Your Honor, because the charging instrument is required to indicate the state's intent to sentence as a felon and the use of the prior conviction to define the crime as a felony. I guess my point is this. Is the law that you have correctly recited to us an Apprendi consideration rather than a charging consideration? We're left with this strange situation here. It's nobody's fault. You have to argue the case as it is. But we're left with the strange situation here where a key to raising this crime from a Class A misdemeanor ultimately to a Class X felony with a 30-year sentence is whether or not the defendant committed the earlier crime. Is that correct? That is correct, Your Honor. And I believe that the jury does not make that decision. Correct. And I don't believe that that creates a due process concern because, in essence, the prior conviction is, in essence, a sentencing enhancement. Yes, it is necessary to the definition of DWLR as a felony. I guess the question then is, if merely a sentencing issue, can it also, while it's being a sentencing issue, change the grade of the crime from Class A misdemeanor to Class IV felony and then to armed violence and a 30-year sentence? Yes, Your Honor. I think it's the same as DWLR itself, which is defined as either a misdemeanor or a felony, depending on whether it's a subsequent offense. But under neither circumstance is that prior conviction an element of the crime. Well, let's get to the practicalities that I think were asked in my hypothetical. The armed violence statute says, while armed with a dangerous weapon, he commits any felony defined by Illinois law. Right? No problem there. Had the state's evidence relating to defendants' prior DWLR conviction been somehow deficient? An example, the prior revocation was not for DUI, which it had to be. The only place to rectify that would be before the trial judge at sentencing because the jury would have never heard about it. Correct, Your Honor. So would then that judge at sentencing vacate the armed violence statute?  Yes, Your Honor. Vacate the jury determination at sentencing? Yes, Your Honor. And that is not problematic? I do not believe so, Your Honor. It does seem, you know, perhaps procedurally unusual, but I don't believe that it creates any due process concern. Well, it's procedurally unusual because a jury conviction is now being undone by evidence presented at sentencing. Not evidence that was ever presented to the jury, but evidence presented at sentencing. In my hypothetical, in which the prior DWLR was not for DUI, there was a mistake made somewhere along the way. The jury never hears that. And now the judge says, okay, well, I'm going to vacate the jury's determination and conviction based on evidence that I've heard. Not that the jury's heard, the mistake was made about it. And that isn't problematic. Well, as a matter of law at that point, the crime that the state had charged the defendant with would then become not satisfactory because DWLR is defined as a felony only where there is a prior conviction, and the initial suspension or revocation stems from one of the list of reasons, including DUI. So factually, the jury will have still found all of the elements of the crime of armed violence, but however, once the state can't demonstrate that there was a prior conviction, DWLR is not defined as a felony in his case any longer. And thus, as a matter of law, it wouldn't be sufficient to convict and sentence him as such. But the question here, or the two questions here, as the defendant has separated them out, are one, whether DWLR can satisfy the so-called predicate offense element of armed violence, and two, whether the elements of the crime were proven beyond a reasonable doubt to the jury. The plain and unambiguous language of the armed violence statute states that you're guilty of armed violence if, while armed, you commit any crime defined as a felony under Illinois law, and then it proceeds to exclude 10 felonies explicitly, armed robbery, home invasion, several others. And those that it doesn't exclude are unambiguously included. And there are several points to be made here about that interpretation. One is which the cases that defendant cites and says stand for the proposition that any felony really means something like any felony that furthers the purpose of the statute, we're discussing the statute before the legislature took the time to explicitly exclude certain felonies. Herron, which — Does it make any difference that it seems clear in the total statutes why they made those exceptions? I believe that — They made those exceptions so that these particular crimes would qualify for another enhancement. Well, and as well, Your Honor, also to avoid certain problems such as proportionate penalties, identical elements problems. And I actually think that strengthens the state's argument that the legislature intended any felony to mean any felony other than those that create these specific problems. The statute now, for example, excludes crimes such as the one in Herron that become a felony only by virtue of the defendant having been armed at the time. That addressed a specific problem. The legislature could easily have excluded all felonies that are misdemeanors enhanced for various factors, including prior convictions, and they did not. So in addition to the fact that the specific circumstances of the felony in Herron, that it became a felony only because the defendant was armed, not being present in this case, I think the fact that the legislature has since excluded certain felonies explicitly strengthens the state's argument that the clause, any crime defined as a felony under Illinois law, means precisely that, any felony. I also will point out that Alejos and Fernetti are also not applicable here. They dealt with crimes that this court determined were undeterrable, and as the defendant himself acknowledges, driving while one's license is revoked is not an undeterrable offense, which actually brings me to another point I want to clarify. Defendant's conduct for which he was convicted and sentenced was not driving while carrying a knife. It was committing a crime defined as a felony while armed with a dangerous weapon, which is, I think, important to keep in mind, especially as considering defendant's proportionate penalties clause and abuse of discretion arguments that he makes in his briefs, but did not address in his argument earlier. Counsel, are there any other cases in which some elements of a predicate felony are not submitted to the jury for a decision under that violence? I'm not aware of a case in which this specific... Similar to this situation? I think the situation is similar to DWLR itself, or any felony that is a felony because of a prior conviction. The defendant's charged with a felony is notified that they're facing felony charges, and that it's because of a prior conviction, but that prior conviction by operation of Illinois law, no one disputes 5113C says what it says, and that it was properly applied in the sense that it's not an element of the crime and that that evidence can't be given to the jury, and yet it's still a felony. It is a class 4 felony provided that the state present that evidence to the judge at sentencing. But I was talking with reference to the armed violence statute. Well, I suppose any felony where the crime was a felony or defined as a felony only by virtue of defendant having a prior conviction would follow the same procedures. I'm not aware of any off the top of my head, Your Honor. I also would contend that allowing these kinds of felonies to serve as a predicate offense for armed violence does in fact further legislative intent. And again, the language here I think is unambiguous in all three statutes, but to the extent the court does look to legislative intent to determine what the statutes hold, the intent of deterring criminals from bringing together uniquely dangerous combinations of criminal activity and dangerous weapons is furthered by allowing DWLR to serve as a predicate felony. And I think the instant case actually is an example of that. The defendant fled the scene of his felony with an officer in pursuit and entered a private residence, actions that were all necessitated by him having committed a felony. And these actions created a much higher degree of risk for the officer and members of the community. Mrs. Uvan, for example, did not want the defendant hiding in her house. If she had tried, if the officer had apprehended the defendant, if Mrs. Uvan had tried to keep him from entering her house, they would have been at far greater risk because the defendant was armed with what the legislature has determined is a dangerous weapon at the time. Very quickly, as far as the proportionate penalties clause challenge goes, the grounds that are raised that remains from Sharp is that the statute is so cruel, degrading, and wholly disproportionate to the seriousness of the offense that it shocks the conscience of the community. I don't think that that can be found in this case. The court's reasoning in Lombardi when it found that it was reasonable for the legislature to determine a sentence with a minimum of 15 years' imprisonment was appropriate when the underlying or the predicate offense would ordinarily have resulted in a penalty of probation and only one to three years in the defendant's case in that situation. The court determined in Lombardi that was reasonable, I think for the same reason, by focusing on the inherent danger that the legislature identified in committing a felony while armed. The court cannot find that it shocks the conscience of the community to instill such heavy penalties in this case, nor did the sentencing court abuse its discretion in this case. It considered evidence in mitigation from the defendant, from his pastor, from a prior employer and friend, and it balanced that against the defendant's extensive criminal history. This was his seventh felony. He was actually on MSR for a prior conviction at the time that he committed this crime, as well as a history of substance abuse, driving while drunk, driving while his license is revoked, and committing felonies while armed, sentencing the defendant to 30 years' imprisonment, which was well within the statutory range. He faced a minimum of 10 years and a maximum of 60 years was not an abuse of discretion. Because the plain, unambiguous language of the armed violence statute states that any felony may serve as a predicate offense for armed violence, where 10 specific felonies are excluded, all the rest clearly are not. The people proved beyond a reasonable doubt each of the elements of a crime defined as a felony, DWLR, as well as that defendant was armed with a dangerous weapon. And the trial court sentenced the defendant to a sentence well within the statutory range. Because of the defendant's criminal history, it was more than the minimum allowed, but as mentioned, far less than the maximum term he faced. The legislature has reasonably determined that this kind of significant sentence is necessary to deter criminals from engaging in the inherently dangerous and potentially deadly conduct of committing felonies while armed with dangerous weapons. The court has no further questions. For these reasons, as well as those stated in our briefs, the people of the State of Illinois respectfully request that this court affirm the judgment of the Appellate Court of Illinois, 3rd District, upholding the defendant's conviction and sentence for armed violence. Thank you, Mr. Fisher. Rebuttal, Mr. Hamill. Thank you, Your Honors. The difference between this case and an Apprende situation is that, or an Almendares-Torres situation is really the case that matters, is that in Almendares-Torres, there was a valid conviction based on the evidence that was presented at trial, or I think that might have been a guilty plea. But the offense that he was convicted of was, I believe, entering the country illegally after being deported. That was proven that was an offense. The question only was, does he, which sentencing range does he get as a result? Now, if the State had gone to the sentencing hearing in that case and not proved the prior conviction, he would have been sentenced for the, in this lower range, for the same offense. In this case, the difference is that it's an element of the offense without which there is no offense at all. And that makes this case more like, for example, an unlawful use of a weapon by a felon, where if the State fails to prove at trial that the defendant is a felon, there's simply no conviction. And that's the difference between this case and Almendares-Torres, where we have sentencing enhancements versus actual elements of the offense. Now, the State brings up that the armed violence statute has been amended and now includes some exceptions. Therefore, the apparently Herron, Alejos, and Frenetti are no longer good law. I don't think that's really a fair interpretation of the amendments to the armed violence statute. It's pretty clear what the legislature was doing, particularly the ten felonies that were in effect at the time that Mr. Lucas was arrested, were all enacted in Public Act 91-404, which happened to be the same one that created other enhancements for those same felonies. We all know why they had to do that, because it all came up in this court in Hochschild, which the State talks about in his brief. They had to do it because it created a proportionate penalties problem. The legislature didn't scour the criminal code looking for felonies to exclude to make sure that any felony really included every felony that they wanted it to. And the fact is, Alejos and Frenetti, as far as I know, the crimes of involuntary manslaughter and involuntary manslaughter were not part of that list of ten felonies, at least not in 2004. And those cases are still good law. So any felony does not mean every felony. It still doesn't. It never has under this Court's holdings, and it still doesn't today. And I think the State talks about the convergence of three different statutes. I think that helps illustrate why this wasn't intended by the legislature. This is three disparate statutes that have completely different purposes coming together to create this situation. You have the Armed Violence Statute saying any felony. Then you have the DWLR Statute saying, well, this is a Class A misdemeanor, but if you have subverting prior convictions, well, then maybe it's a felony. And then you have Section 111.3.C coming in saying, look, those aren't elements of the offense, and they're actually enhanced sentencing factors to be proved as sentencing. All three of these statutes, when you put it all together, it's clear what the legislature intended here. And it's not this case. And it's certainly not this procedure, which even if the legislature did intend this procedure, I would contend they couldn't do it because this violates the Due Process Clause. And finally, just one last point. I didn't talk about the apportionment of penalties argument in my opening argument, but since the State did bring it up, we brought up the Lombardi case. Lombardi was a Due Process Clause case. There was a proportionate penalties analysis in the case, but that involved now defunct cross-comparison analysis, which really isn't relevant here. And also, Lombardi was a possession-controlled substance case. Possession-controlled substance is a felony when convicted by anybody. The conduct is a felony no matter what your background. The possession of a controlled substance can be found to further the purpose of the armed violence statute because people who possess narcotics create a dangerous situation where being armed, which could be exacerbated by their being armed. Driving is driving whether you're legal, whether you have a license, whether you're merely revoked, or whether you're revoked with a prior revocation with the DUI. The conduct doesn't get any worse. So for those reasons and the reasons listed in my brief, I would ask this Court to vacate Mr. Lucas' armed violence conviction. Thank you, Mr. Hamill. Thank you, Mr. Fisher. Case number 104558, People of the State of Illinois v. Robert T. Lucas, is taken under advisement as agenda number three.